## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Trooper Michael J. Haines, being sworn, state as follows:

### INTRODUCTION

1. I am a State Trooper with the Massachusetts State Police and have been employed for 14 years. I am a graduate of the 80th Recruit Training Troop of the Massachusetts State Police Academy. I hold a Bachelor's and Master's Degree in Criminal Justice from Curry College in Milton, Massachusetts. I am currently assigned to the Division of Investigative Services, Special Investigations Unit of the Massachusetts State Police and to the Federal Bureau of Investigation ("FBI") Violent Crimes Task Force ("Task Force"). The Task Force is comprised of personnel from the FBI, Massachusetts State Police, Boston, Somerville, Malden, and Dedham Police Departments. The Task Force investigates bank robberies, as well as violent crimes, which are punishable under federal and state law.

2. During my tenure as a law enforcement officer, with both the Massachusetts State Police and the Task Force, I have interrogated numerous defendants, informants, and suspects who were users, sellers and/or distributors of controlled substances and who also had violent criminal records. I have additionally been involved in numerous investigations involving assaults, larcenies, extortion, firearms violations, armed and unarmed robberies, and crimes against persons. My investigations have included the use of surveillance techniques and the execution of arrest warrants and search and seizure warrants, including those involving data from telephone and other electronic service provider. Since joining the Task Force, I have investigated or assisted with multiple bank robbery investigations. I have been the affiant in multiple search warrants, both State and Federal.

**PURPOSE OF AFFIDAVIT**

3. I am aware that Title 18, United States Code, Sections 2113 (a) and (d) make it a crime for anyone to use force and violence, or intimidation, to take from the person of another, money or any other thing of value belonging to or in the care, custody, control, management, or possession of any federally-insured financial institution, and in committing such offense, to assault or put in jeopardy the life of any person by the use of a dangerous weapon or device.

4. I submit this affidavit in support of a criminal complaint charging Glenn Legere, (DOB: xx/xx/1979) (LEGERE), with the armed robbery of the Santander Bank, located at 51 Pleasant Street in Weymouth, Massachusetts on December 17, 2024. On the date of the robbery, the Santander Bank was insured by the Federal Deposit Insurance Corporation. The facts stated herein are based on my own personal involvement with this investigation, as well as from information provided to me by other law enforcement officers involved in the investigation. In submitting this affidavit, I have not included each and every fact known to me about this investigation; rather, I am only submitting enough evidence necessary to establish the requisite probable cause to believe that LEGERE committed violations of 18 U.S.C. § 2113(a) and (d).

**STATEMENT OF PROBABLE CAUSE**

5. On Tuesday, December 17, 2024, the Weymouth Police Department dispatched officers at approximately 4:52 pm to the Santander Bank located at 51 Pleasant Street in Weymouth for a reported bank robbery. Multiple officers, including Weymouth Detective Lindsay Browning ("Detective Browning"), responded to the bank to gather information and begin interviewing witnesses. The Weymouth Police Department also notified members of the FBI Bank Robbery and Violent Crimes Task Force of the robbery.

6. Detective Browning initially spoke with Victim 1, a teller at the bank. Victim 1 stated to Detective Browning that he and his coworkers, Victim 2 and Victim 3, had begun

preparation for their closing. Victim 2 and Victim 3 were in the vault clearing out cash boxes and securing money, while Victim 1 remained in the first teller position for any potential customers.

7. Victim 1 stated that the suspect walked into the bank using the Central Street entrance and proceeded to his window. Victim 1 added that the suspect then opened a black cloth bag and demanded all the money. Victim 1 reported the male party also was armed with a black firearm. Victim 1 reported he feared for his life and began to yell as he crouched down. Victim 1 stated that he began to hand the suspect money from his cash box. At this point the suspect was yelling words to the effect of "I need money", "I want the money" and "I don't play". Victim 1 told investigators that at this point the suspect did not seem satisfied with the amount of money he was given and began to walk towards the other teller windows demanding more money. Victim 1 told the suspect he did not have any more money and proceeded to show him the empty cash drawer. At this point, Victim 3 began to yell for Victim 1 to go into the vault for his safety. The suspect then left the bank using the same entrance he came in through.

8. The suspect was described as a white skinny male, wearing an orange sweatshirt and had a white face covering. Victim 1 believed the male to be between 20 to 40 years of age and he recalled the suspect did not speak with a discernable accent. However, Victim 1 reported that he was in such a state of fear as a result of the suspect pointing the firearm at him that he did not pay close attention to the details of the suspect's appearance.

9. Responding investigators were able to review the security images of the suspect while at the bank. The investigators observed the suspect to be wearing a purplish colored, Under Armor sweatshirt, a whitish colored baseball cap, a white face covering, black sweatpants, grayish colored gloves, and white sneakers. On the video, the suspect appeared to use a black cloth bag

that closed with a draw string during the robbery.

10. During additional review of the bank security video, investigators observed that the male suspect entered the bank from the Central Street side at approximately 4:46 pm. The suspect carried the bag in his right hand as he approached the victim teller's window. He can then be seen removing a black handgun from the front pocket of his sweatshirt using his left hand. The suspect kept the firearm in his left hand and at various times pointed the firearm directly at Victim 1. When the suspect points the gun at Victim 1, investigators observed that the suspect's finger was in the trigger guard and on top of the actual trigger. The suspect only puts the firearm down when he puts the money into the bag. The suspect is then seen running from the right to left side of the bank while making gestures towards the cash box areas. The suspect is wearing white sneakers, black sweatpants with red stripes on each side, a dark colored, Under Armor hooded sweatshirt, mask, and whitish colored baseball hat. The suspect then exits the bank at approximately 4:47 pm out the Central Street side. Images of the suspect entering the bank (left), retrieving currency from the counter (center), and the suspect holding the firearm with his left hand (right) and his index finger inside are provided below:



11. Bank security personnel conducted an audit following the robbery, which

confirmed a loss amount of $947.00 in federally insured currency.

12. On Wednesday, December 18, 2024, this affiant along with other members of the FBI Task Force began a canvass for surveillance video from nearby commercial businesses on Pleasant Street in Weymouth to determine the path of the suspect prior to and after the robbery, and to determine the suspect's mode of transportation. This affiant met with Tony Martin, Director of Public Safety for South Shore Hospital. Martin allowed this affiant and other investigators to review surveillance footage from 70 Pleasant Street, Weymouth, which is owned and maintained by South Shore Hospital ("SSH"), and surveillance video from the parking lots of SSH. This affiant confirmed that the date was accurate, but the time stamp was approximately 15 seconds behind after comparing to T-Mobile cellular network time.

13. At approximately 4:36 pm, surveillance footage from 70 Pleasant Street, Weymouth captures a gray Jeep Grand Cherokee pass Santander Bank (51 Pleasant Street, Weymouth). The vehicle then makes a left turn from Pleasant Street into the rear of 70 Pleasant Street. SSH surveillance footage captures the gray Jeep Grand Cherokee reverse into a parking spot in the rear of 70 Pleasant Street. At approximately 4:39 pm, an individual exits the driver's seat of the gray Jeep Grand Cherokee parked in the rear of 70 Peasant Street, and walks in the direction of Santander Bank, located at 51 Pleasant Street, Weymouth. The individual is wearing white sneakers, black sweatpants with red stripes on each side, dark colored Under Armor hooded sweatshirt, mask, and a whitish colored baseball hat. At approximately 4:46 pm, surveillance footage from 70 Pleasant Street captures the individual entering Santander Bank (51 Pleasant Street, Weymouth). Surveillance footage then captures the same individual exit Santander Bank at approximately 4:47 pm, crossover Pleasant Street, and jog towards the rear of 70 Pleasant Street, Weymouth. At approximately 4:48 pm, the individual enters the driver's seat of the gray Jeep

5

Grand Cherokee and exits out the rear of 70 Pleasant Street towards Fogg Road, Weymouth. SSH Security cameras then capture the gray Jeep Grand Cherokee making a right onto Route 18 from Fogg Road in Weymouth at approximately 4:51 pm.

14. Investigators reviewing surveillance images of the suspect and the vehicle took note of the sunroof, black door handles, no front license plate attached during time of robbery, front driver's side headlight out, and a missing rain guard on the passenger side rear door. Investigators also made note of the driver's side rear light partially not illuminated. An image of the suspect wearing white sneakers, black sweatpants with red stripes, dark colored Under Armor hooded sweatshirt, mask, and a whitish colored baseball hat prior to the robbery (left) and the suspect vehicle (center/right) from 70 Pleasant Street, South Shore Hospital, Weymouth MA on 12/17/2024 below:



15. Investigators provided Mark Huard, a Special Agent with the National Insurance Crime Bureau (NCIB), photographs of the vehicle of interest. Special Agent Huard advised that the vehicle appeared to be a Jeep Grand Cherokee fourth edition between the years 2011 to 2021. Investigators then requested an offline search with the Massachusetts Department of Transportation for Jeep Grand Cherokees, colors gray and silver, between the years of 2011 and 2021. With the results, investigators focused on Jeep Grand Cherokees that were registered in nearby cities and towns to the robbery location to include Weymouth, Braintree and Quincy. The

results revealed 437 gray or silver Jeep Grand Cherokees between the years of 2011 and 2021 that had an active registration.

16.     On December 17, 2024, Detective Browning along with Special Agent Zach Brune sent out an "Attempt to ID" and "Awareness Bulletin" to include photos of the suspect and the vehicle of interest to other law enforcement agencies in Massachusetts.

17.     After reviewing the bulletin, Wellesley Police Detective Mark D'Innocenzo contacted Special Agent Zach Brune and provided him with a vehicle that strongly resembled our suspect's vehicle. Detective D'Innocenzo has access to FLOCK, which is a License Plate Reader (LPR) system that captures images of license plates and vehicles. Detective D'Innocenzo focused on FLOCK cameras in the Weymouth, Braintree, and Quincy area prior to the robbery, and post robbery. Detective D'Innocenzo located Mass Registration 3TKE53 in the system. Detective D'Innocenzo noted that MA Reg 3TKE53, a gray 2015 Jeep Grand Cherokee, had a missing rain guard on the passenger side rear door, a sunroof, black door handles, and a left side rear light that was partially out. Investigators then conducted a FLOCK history search for MA Reg 3TKE53 which revealed that the vehicle was captured on FLOCK cameras in Quincy prior to the robbery at 1:14 PM on 12/17/24 and again post robbery at 5:35 PM in Quincy. A Registry of Motor Vehicle ("RMV") query on MA Reg 3TKE53 revealed that the vehicle is registered to LEGERE out of 91 Clay Street, Quincy MA. An image from a FLOCK camera of Mass Reg 3TKE53 (left) and image

7

of suspect vehicle from Santander Bank robbery 12/17/24 below:

 

18.     Additionally, I reviewed an image taken from FLOCK the day of the robbery depicting the front end of Mass Reg 3TKE53, showing that the vehicle' driver's side headlight was out or not functioning. I reviewed this image alongside an image of the suspect vehicle from South Shore Hospital's surveillance footage as it makes a left into the rear of 70 Pleasant Street, Weymouth just prior to the robbery. The suspect vehicle appears to have the same non-functioning driver's side headlight as Mass Reg 3TKE53 in the FLOCK image from the same day.

### SURVEILLANCE OF 91 CLAY STREET, QUINCY

19.     On Thursday, December 19, 2024, this affiant went to LEGERE's apartment complex at 91 Clay Street in Quincy and observed the gray Jeep Grand Cherokee parked in the lot. LEGERE is the registered owner of the gray Jeep Grand Cherokee bearing MA Registration 3TKE53, which upon observation had the same style sunroof, black door handles, and was missing the same passenger side rear door rain guard as the suspect vehicle in the robbery.

20.     On Friday, December 20, 2024, this affiant conducted surveillance in the area of 91 Clay Street in Quincy, MA. At approximately 11:18 am, this affiant observed LEGERE enter MA Registration 3TKE53. This affiant observed that the left side rear running light of MA Reg 3TKE53 was partially out as LEGERE exited the parking lot operating the vehicle.

21.     On Friday, December 20, 2024, this affiant reviewed interior surveillance cameras

8

from LEGERE's apartment complex at 91 Clay Street in Quincy from the day of the robbery (12/17/2024) and the following day (12/18/2024). This affiant confirmed that the date was accurate, and the time was approximately 6 minutes behind after comparing to T-Mobile cellular network time. In reviewing the video, I observed that at approximately 11:49 am (actual time 11:43 am), the footage captures LEGERE exiting his apartment complex, located at 91 Clay Street, Quincy, wearing a dark colored winter coat, blue jeans, and white sneakers; these sneakers appear similar to the ones worn by the suspect during the commission of the Santander Bank robbery. LEGERE is also seen carrying a dark colored duffle bag, which appears to have something(s) in it.

22.     This affiant continued to review footage from LEGERE's apartment complex in Quincy for the remainder of the day on December 17, 2024, however LEGERE is never observed returning to the apartment complex. As a result, this affiant then reviewed surveillance footage from LEGERE's apartment complex in Quincy on December 18, 2024, which captures LEGERE and his wife returning to the complex at approximately 11:56 am (actual time 11:50 am). LEGERE is observed wearing a brownish colored sweater, light blue jeans, and carrying a dark colored jacket, and same dark colored duffle bag. However, LEGERE appears to be wearing black colored sneakers with white soles; different sneakers than the white ones he had on the day prior, which appeared to be similar to the ones worn by the robbery suspect on December 17, 2024. An image from LEGERE departing on December 17, 2024 (left) and returning on December 18, 2024 (right)

from 91 Clay Street in Quincy are below:



23. This affiant conducted a Board of Probation criminal history check on LEGERE which revealed that he has an extensive criminal history, to include armed robbery by firearm in 2011 out of Norfolk Superior (Docket #N0CR110132001) where he was sentenced to three to five years at a Massachusetts Correctional Institution. LEGERE was also charged, convicted, and ultimately sentenced to three years (Docket #1000408001) for both armed and unarmed robbery of banks in 2010 in Braintree, Hanover, Duxbury, and Plymouth.

24. This affiant also conducted a Commonwealth of Massachusetts Inmate Web search, a database for law enforcement personnel to search for inmates who have served time in the Commonwealth of Massachusetts. The results of that search revealed that LEGERE, who has served time previously for armed and unarmed robbery, is listed in that database as a white male with brown hair, brown eyes, approximately 6 feet in height, and is left hand dominant; this is similar to the profile of the Weymouth robbery suspect. In addition, investigators noted that the suspect from the Santander Bank robbery on December 17, 2024 in Weymouth, drew his firearm from his sweatshirt using his left hand.

25. On Friday, December 20, 2024, this affiant swore out a search warrant from Quincy District Court to install a covert Global Positioning System (GPS) on LEGERE's Jeep Grand

Cherokee bearing Massachusetts registration 3TKE53. On the morning of Saturday, December 21, 2024, this affiant along with Troopers assigned to the Massachusetts State Police Technical Services Unit installed the GPS on LEGERE's Jeep Grand Cherokee.

26. On Monday, December 23, 2024, investigators conducted surveillance on LEGERE while monitoring the GPS tracking device. During this time, investigators received an alert from the GPS tracking system that the device on LEGERE's Jeep Grand Cherokee had been removed. Investigators determined on Thursday, December 26, 2024, that the device had been removed from LEGERE's Jeep Grand Cherokee and reattached to another vehicle, unknown to that vehicle's owner.

27. On Thursday, December 26, 2024, Quincy Police investigators observed LEGERE exit his residence at 91 Clay Street in Quincy, MA and enter a white Toyota Camry registered to Enterprise rental. Investigators spoke with Enterprise Rental Risk Management and learned that the vehicle was rented by LEGERE, who provided an address of 91 Clay Street, Quincy MA. and a telephone number of XXX-XXX-2643.

## CELLSITE LOCATION INFORMATION FOR LEGERE

28. On January 11, 2024, T-Mobile provided responsive records to a federal grand jury subpoena related for subscriber information related to cell phone number XXX-XXX-2643. According to the records from T-Mobile LEGERE was listed as the subscriber for the number with a listed address of 91 Clay Street, Quincy MA.

29. On February 5, 2025, I sought and received a search warrant from the United States District Court for the District of Massachusetts for the search and seizure of information relative to the T-Mobile subscriber and cell site information for LEGERE's phone number xxx-xxx-2643 (25-mj-3028-JDH). On February 24, 2025, T-Mobile provided cell site location information for

the phone number registered to LEGERE. This cell site information from T-Mobile was then analyzed by Special Agents assigned to the FBI Cellular Analysis Survey Team ("CAST"), which is comprised of Agents with specialized expertise in gathering and analyzing cellular telephone data to support investigations. CAST determined that at 3:08 pm on December 17, 2024, the day of the robbery, LEGERE's phone received a voice message from number XXX-XXX-2263 and in doing so his phone utilized a tower in the area of 8 Chauncey Street, Weymouth, MA, which is approximately a tenth of a mile from the Santander Bank.[1] Then again, at 4:52 pm, at about the time officers were dispatched to the bank, LEGERE's phone made an outgoing call to the same number and used a tower located in the area of 106 Finnell Drive, Weymouth MA, which is between two and two and half miles from the Santander Bank.

## CONCLUSION

30. Based on the foregoing, I submit there is probable cause to believe that on December 17, 2024, LEGERE, by force and violence, and by intimidation took from the person and presence of another, money in the care, custody, control, management and possession of the Santander Bank, a bank insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a) and (d).

---

[1] There were several calls from the same number to LEGERE's phone between 3:19 pm and 4:50 pm on the day of the robbery, but LEGERE's phone was unreachable, which based on my training and experience is indicative of someone having their phone turned off.

Sworn to under the pains and penalties of perjury,

_____
Michael J. Haines
Trooper, Massachusetts State Police
Task Force Officer – FBI Violence Crimes Task Force

Sworn to before me by telephone in accordance with Fed. Rule Crim. P. 4.1 on April __, 2025.

_____
HON. JESSICA D. HEDGES
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS